IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **KOHLER TRANSPORT, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CIV-19-1019-R |
| | ) | |
| **CENTRAL STATES TRUCKING CO.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

Before the Court is Plaintiff Kohler Transport Inc.'s ("Kohler") Motion for Partial Summary Judgment. Doc. No. 46. Defendant Central States Trucking Co. ("CST") responded in opposition to the motion. Doc. No. 50. Kohler filed a reply in support of its motion. Doc. No. 57. Upon consideration of the parties' submissions, the Court finds as follows.

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In resisting summary judgment, "[a] party asserting that a fact ... is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including ... affidavits or declarations." *Id.* 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* 56(c)(4).

According to Kohler, Christopher McCaleb was hired by "a company named

ProDrivers to drive routes for the Kohler account transporting Kohler cargo."[1] Doc. No. 46, ¶ 7. On May 18, 2018, ProDrivers certified its completion of McCaleb's annual review, explaining he met minimum requirements for safe driving. Doc. No. 46-2. On December 3, 2018, McCaleb drove northbound on Interstate 35 from Dallas towards Oklahoma City transporting Kohler's cargo in a tractor-trailer. Doc. No. 46, ¶ 11; Doc. No. 50, p. 4, ¶ 1. Feeling fatigued, McCaleb parked his truck on the shoulder of I-35 and placed his hazard lights on. Doc. No. 46, p. 3 ¶ 11; Doc. No. 50, ¶ 19. Meanwhile, Carlos Escoto, also driving a semi-tractor trailer northbound on I-35, on behalf of Central States Trucking ("CST"), veered off to the right of the roadway and struck the rear of McCaleb's tractor-trailer. *Id.* ¶ 13. The collision set both tractor-trailers on fire, killing Escoto and damaging both trucks' cargo. Doc. No. 46, ¶ 12; Doc. No. 50, p. 2.

Seeking to recover the value of the lost cargo, Kohler filed suit against CST, alleging negligence under the theory of respondeat superior. Doc. No. 1, ¶¶ 9–17. CST then filed counterclaims against Kohler, alleging various theories of negligence.[2] Doc. No. 9, pp. 5–9. In this motion, Kohler moves for summary judgment on the negligent training and supervision and negligent entrustment counterclaims against it. Doc. No. 46. Pursuant to *Jordan v. Cates*, 935 P.2d 289, 293 (Okla. 1997), the parties agree that the negligent

---

[1] CST disputes McCaleb's employment with ProDrivers but provides no support for its position that ProDrivers did not employ McCaleb. Doc. No. 50, pp. 8–9.CST misunderstands Kohler's argument as well. In its response motion, CST states that "Kohler argues that it is but a vendor of ProDrivers and thus has no duty to vet commercial drivers…". Doc. No. 50, p. 8. However, in its motion, Kohler argues that *ProDrivers is a vendor of Kohler*. Doc. No. 46, p. 7 ("Kohler relied on ProDrivers to supply qualified drivers to transport Kohler cargo.")

[2] In its Answer to Kohler's Complaint, CST's negligence counterclaims include ordinary contributory negligence under the doctrine of respondeat superior, negligence per se of both Kohler and McCaleb, negligent training and supervision, and negligent entrustment. Doc. No. 9, pp. 5–9.

training and supervision claim fails as a matter of law because Kohler stipulated that McCaleb was acting within the scope of his employment for Kohler.[3] Doc. No. 46, pp. 4–6; Doc. No. 50, pp. 7-8. However, the parties dispute whether Kohler is entitled to summary judgment on CST's negligent entrustment claim.

CST argues that because McCaleb was diagnosed with sleep apnea and had been in a "preventable" accident, entrusting McCaleb with driving its cargo was negligent. Doc. No. 50, pp. 8, 11. Kohler responds, however, that delegating its staffing decision to ProDrivers relieved its duty to independently credential McCaleb and that even if such duty existed, no facts reveal McCaleb was a careless, reckless, and incompetent driver.[4] Doc. No. 46, p. 9.

"Negligent entrustment of an automobile occurs when the automobile is supplied, directly or through a third person, for the use of another whom the supplier knows, or should know, because of youth, inexperience or otherwise, is likely to use it in a manner involving unreasonable risk of bodily harm to others, with liability for the harm caused

---

[3] Kohler relies on this Court's decision in *Romero v. Pro Security, LLC*, No. CIV-16-595-R, 2017 WL 2374365, at *2 (W.D. Okla. May 31, 2017) for its argument that Kohler was entitled to rely on ProDrivers' assessment of McCaleb's ability to s drive safely. Doc. No. 46, p. 7. However, it is unclear why the parties find it necessary to analyze *Romero* and whether a direct duty applies to Kohler because the claim in dispute in *Romero* was for negligent hiring, training and supervision. 2017 WL 2374365, at *1. Here, the parties agreed that CST's negligent hiring and supervision claim is subject to dismissal because Kohler stipulated to an agency relationship with McCaleb. Doc. No. 46, pp. 4–6. Thus, the negligent hiring and supervision claim is subject to dismissal and the Court need not address *Romero*'s application to CST's *negligent entrustment claim*.

[4] McCaleb's driving record begins with completing truck driving school and spending approximately nineteen months driving for multiple employers. Doc. No. 46, ¶¶ 1–3. During that period, McCaleb hit a stopped vehicle in a parking lot. The accident was preventable but was not "DOT reportable." Doc. No. 50-1. CST also points to McCaleb's sleep apnea as evidence that Kohler negligently entrusted him with its cargo. According to deposition testimony, McCaleb's sleep apnea diagnosis required an annual medical clearance. Doc. No. 50-2, p. 7.

thereby."[5] *Sheffer v. Carolina Forge Co., L.L.C.*, 306 P.3d 544, 548 (Okla. 2013) (internal citations omitted). To establish a claim of negligent entrustment, the plaintiff must show that a reasonable person knew or should have known that the person entrusted with the vehicle would be likely to operate it in a careless, reckless, or incompetent manner. *Green v. Harris*, 70 P.3d 866, 868 (Okla. 2003).

CST provides no evidence that Kohler knew or should have known that McCaleb was likely to operate the tractor-trailer in a careless, reckless, or incompetent manner. First, ProDrivers certified that McCaleb met the minimum requirements for safe driving. Doc. No. 46-2. Pursuant to the relevant provisions of the Federal Motor Carrier Safety Regulations ("FMCSR"), a driver is physically qualified to drive a commercial motor vehicle if he 1) meets the physical qualification standards, and 2) has complied with the medical examination requirements. 49 C.F.R. § 391.41(a)(3)(i). Though McCaleb had been previously diagnosed with sleep apnea, his diagnosis did not render him unfit to drive. *See, e.g.*, *Butler v. Washington Metro. Area Transit Auth.*, 275 F. Supp. 3d 70, 76 (D.D.C. 2017) (finding that sleep apnea, which could be a disqualifying medical condition under the FMCSR, may be treated by regular use of a CPAP machine). Rather, his obligation to receive medical clearance simply increased in frequency from every twenty-four months to every twelve months. Doc. No. 50-2, p. 7. McCaleb received his annual medical clearance in August of 2018, thus, he was medically cleared to drive on the day of the accident—December 3, 2018. Doc. No. 50-2, pp. 7-8.

---

[5] CST argues an additional duty exists whereby a commercial motor carrier must "qualify every driver operating commercial motor vehicles on its behalf." Doc. No. 50, p. 10 (citing 49 C.F.R. § 391.11(a)).

4

Second, one minor accident involving a stopped vehicle in a parking lot does not establish that McCaleb's driving created an unreasonable risk of bodily harm to others. *See e.g., Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640, 653 (S.D. Tex. 2016) ("A record with two moving violations or accidents within a two-year period prior to the accident is also insufficient."). CST argues that McCaleb "falsely stated on a ProDrivers form that he had not been in any accidents in a twelve-month period." Doc. No. 50, p. 11. However, the form reveals that McCaleb certified only that he *had not been convicted* of a traffic violation required to be listed in accordance with Section 391.27 of the FMCSR. Doc. No. 46-2. Further, the documentation of the accident reveals it was an unreportable offense. Doc. No. 50-1. Thus, neither McCaleb's sleep apnea nor one minor accident in a parking lot rendered McCaleb an unreasonable risk to others.

Lastly, CST alleges—citing McCaleb's deposition testimony,—that McCaleb was unaware of the requirements of commercial drivers under Oklahoma law. Doc. No. 50, p. 13. During the deposition, CST's counsel and McCaleb engaged in the following dialogue:

| | |
|---|---|
| CST's counsel: | What does the Oklahoma law say about stopping on the shoulder of the interstate? |
| McCaleb: | I'm not sure. |
| CST's counsel: | You don't know the Oklahoma statutes, do you? |
| McCaleb: | No sir, I do not. |
| CST's counsel: | […] you are required to know the rules of the road in every state that you travel in, correct? |
| McCaleb: | No. I was told that I need to know the rules on where to park and what to do when I park. |

5

Doc. No. 50-2, p. 20. CST attempts to establish that because McCaleb was unfamiliar with the statutes in Oklahoma, he was improperly trained, and therefore Kohler negligently entrusted him with driving its cargo because it should have known of his improper training. Doc. No. 50, p. 13. CST's argument, however, is misleading. McCaleb was clearly trained regarding the federal regulations governing parking on the roadway's shoulder because when questioned about setting out triangles after a stop, McCaleb answered that "the first [triangle] needs to go 10 feet, the next one is 100, 100 for the third one" and that "you have to have [the triangles] out by [ ] ten minutes."[6] Doc. No. 50-2, p. 21.

Further, it was unnecessary for McCaleb to learn different statutory rules for parking along the shoulder in Oklahoma and Texas, as CST's counsel suggested. *Id.* As CST explains in its Answer to Kohler's Complaint, "the State of Oklahoma 'adopted the United States Department of Transportation regulations pertaining to motor carrier safety and hazardous materials transportation, as contained in Title 49 of the Code of Federal Regulations …'." Doc. No. 9, ¶ 30 (citing Okla. Admin. Code § 595:35-1-4). Texas also

---

[6] McCaleb's description aligns with 49 C.F.R. § 392.22, which states that

> whenever a commercial motor vehicle is stopped upon the traveled portion or the shoulder […], the driver shall, […] within 10 minutes, place the warning devices […] in the following manner:
>
> (i) One on the traffic side of and 4 paces (approximately 3 meters or *10 feet*) from the stopped commercial motor vehicle in the direction of approaching traffic;
>
> (ii) One at 40 paces (approximately 30 meters or *100 feet*) from the stopped commercial motor vehicle in the center of the traffic lane or shoulder occupied by the commercial motor vehicle and in the direction of approaching traffic; and
>
> (iii) One at 40 paces (approximately 30 meters or *100 feet*) from the stopped commercial motor vehicle in the center of the traffic lane or shoulder occupied by the commercial motor vehicle and in the direction away from approaching traffic.

49 C.F.R. § 392.22(b)(1) (i)–(iii) (emphasis added).

adopted Title 49 of the Code of Federal Regulations. 37 Tex. Admin. Code tit. § 4.11(a). Thus, McCaleb's deposition testimony—that at the time of the deposition, he was unfamiliar with the Oklahoma statutory requirement for parking along the shoulder—is insufficient to establish a genuine fact dispute because the training he received regarding the federal regulations for parking along the shoulder, 49 C.F.R. § 392.22, applied both in Oklahoma and in Texas.

In conclusion, construing the evidence and all reasonable inferences in CST's favor, CST fails to present any evidence that Kohler knew or should have known that McCaleb was likely to operate the tractor-trailer in a reckless or incompetent manner. Accordingly, Kohler is entitled to summary judgment on CST's claim for negligent entrustment. Because CST concedes summary judgment is appropriate on its negligent training and supervision claim, as stated above, Kohler's partial motion for summary judgment is GRANTED IN ITS ENTIRETY.

**IT IS SO ORDERED** on this 5th day of April 2021.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE